**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CALVIN T. STEVENS, : | |
| : | Civil Action No. 18-1387 (BRM) |
| Plaintiff, : | |
| v. : | **OPINION** |
| VINCENT J. VITALE, et al., : | |
| Defendants. : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is *pro se* prisoner Calvin Stevens's ("Plaintiff") Motion to Amend his Complaint. (ECF No. 9.) Plaintiff filed the initial Complaint in this matter in January 2018, raising various claims against Defendants Vincent Vitale; Officer Samuel Gomez; Detective Brandt Gregus; and Sergeant Maurice Finney. (ECF No. 1.) The Court denied his application to proceed *in forma pauperis* as incomplete (ECF No. 2), but he eventually submitted a complete application and the Court granted his request (ECF No. 8). Thereafter, Plaintiff submitted the instant Motion to Amend his Complaint. (ECF No. 9.)

At this time, the Court grants Plaintiff's Motion and orders the Amended Complaint to be filed. The Court must review the Amended Complaint (ECF No. 9), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons stated below, the Amended Complaint is dismissed in its entirety.

**I. BACKGROUND**

The exact nature of Plaintiff's claims in this case, and the connection to the claims in his other civil rights action before this Court, *Stevens v. Jones*, Civil Action No. 16-8694, is unclear. In Civil Action No. 16-8694, Plaintiff initially alleged false arrest/false imprisonment, malicious prosecution and selective enforcement claims against Officer Anthony Jones stemming from a 2016 arrest for robbery. (*Stevens v. Jones*, Civil Action No. 16-8694, ECF No. 1.) This Court reviewed his complaint and permitted his false arrest/imprisonment claim to proceed but dismissed his malicious prosecution and selective enforcement claims. (*Id.*, ECF Nos. 10, 11.) Plaintiff thereafter filed an amended complaint, wherein he alleged the same false arrest/imprisonment claim against Defendant Jones, but also added claims against Detective Greggus and Assistant Prosecutor Vitale for conspiracy to falsely arrest/imprison him and a malicious prosecution claim against all three defendants. (ECF No. 15.) The Court screened the amended complaint and permitted the false arrest/imprisonment claims to continue to proceed but dismissed the malicious prosecution and conspiracy claims. (ECF No. 23.) The false arrest/imprisonment claim against Defendant Jones remains pending in Civil Action No. 16-8694.

Shortly after the Court dismissed Plaintiff's malicious prosecution claims in Civil Action No. 16-8694, Plaintiff filed the instant action. (ECF No. 1.) In the Amended Complaint, Plaintiff names the following defendants: Assistant Prosecutor Vitale, Sergeant Finney, Detective Greggus, Officer Gomez, Officer Jones, Officer Adorno, New Brunswick Police Department, and Judge Diane Pincus.

He alleges on August 8, 2016, Mr. Jose Gomez made a walk-in complaint with the New Brunswick Police Department regarding a robbery which occurred at the building where he was

2

"squatting."[1] (ECF No. 9, at 7.) In response, Officers Jones and Adorno left with Mr. Gomez to assist him with the removal of the remainder of his belongings from the building. (*Id.*) Upon their arrival at the building, the officers encountered Plaintiff and immediately pushed him against the wall and began searching him. (*Id.*) During the search, the officer located the cell phone that had been stolen from Mr. Gomez earlier; Plaintiff states he found the phone in the hallway. (*Id.* at 8.) The officers arrested Plaintiff, despite not having an arrest warrant. (*Id.*)

After his arrest, Officer Jones and Adorno "came together" to ensure Plaintiff would remain in jail by "falsifying legal documents, forging a judicial officers [*sic*] authority to find probable cause for the issuance of the compliant-arrest [*sic*] warrant." (*Id.*) Defendant Greggus joined these two officers in discussions at the police station regarding what charges to file against Plaintiff. (*Id.* at 14.) Defendant Greggus also appeared before the grand jury and committed perjury about his interactions with Mr. Gomez when he came to the police station to report the crime. (*Id.*)

According to Plaintiff, Officer Gomez inappropriately acted as a translator for Mr. Gomez when he was reporting the crime and he was also somehow involved with the issuance of bail. (*Id.* at 15.) Defendant Vitale allegedly presented false testimony to the grand jury in an effort to indict Plaintiff. (*Id.* at 16.) He also failed to correct the indictment, which identified the wrong degree of the crime. (*Id.*) Plaintiff complained about the indictment error to Judge Pincus, who told Defendant Vitale to correct it, if necessary. (*Id.*) Despite the fact Judge Pincus knew Defendant Vitale failed to correct the indictment, she did not take any action. (*Id.* at 28.) Sergeant Finney, a supervisor, allegedly conspired with the officers because his name appears on several false documents. (*Id.* at 20-21.)

---

[1] The factual allegations are taken from the Amended Complaint and are accepted as true for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

As relief, Plaintiff is seeking $500,000 from each defendant.

**II. LEGAL STANDARDS**

**A. Standard for a Sua Sponte Dismissal**

Pursuant the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who is proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive sua sponte screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**B. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**III. DECISION**

As stated above, Plaintiff's precise claims are hard to identify. He appears to repeat many of the relevant facts for the false arrest/imprisonment claims in his other case. Because those claims are already being litigated, the Court assumes Plaintiff intended to raise claims for malicious prosecution, conspiracy to maliciously prosecute, and state law claims in this case.[2]

---

[2] To the extent this is not correct and there are other claims he intended to raise, Plaintiff shall so advise in any second amended complaint.

The Court further notes some of Plaintiff's citations suggest he is attempting to file criminal charges against the defendants, however, he would lack standing to do so because private persons do not have a "judicially cognizable interest in the prosecution . . . of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

**A. Malicious Prosecution**

As this Court previously informed Plaintiff in his other case, a plaintiff attempting to raise a § 1983 claim for malicious prosecution must plead:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered [a] deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014). A plaintiff cannot make out a claim for malicious prosecution unless he specifically alleges the criminal prosecution was terminated in his favor. *Id.* In order for the conclusion of a criminal matter to qualify as a favorable termination, the "criminal case must have been disposed of in a way that indicates the innocence of the accused." *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009). Where the prior case terminated in a manner not indicative of innocence, no favorable termination occurred. *Id.* The Third Circuit has therefore suggested favorable termination can be shown where a grand jury refuses to indict, the prosecution formally abandons the charges, the indictment or information is quashed, the defendant is acquitted, or the defendant receives a favorable final order from the trial or appellate courts disposing of his case. *Id.*; *see also Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002).

Here, while Plaintiff has alleged the Defendants all took various actions to maliciously prosecute him for the robbery of Mr. Gomez, Plaintiff has still failed to plead his criminal prosecution terminated in his favor. In fact, he specifically acknowledges he pled guilty to a third-degree robbery charge to end the proceeding, which would suggest he cannot show favorable termination. *See* (ECF No. 9, at 17); *Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 829–30 (3d Cir. 2011) (affirming dismissal of malicious prosecution claim where charges for peering

and resisting arrest charges were withdrawn pursuant to an agreement or compromise with the defendant and explaining such termination is not considered favorable for purposes of a malicious prosecution action); *White v. Brown*, 408 F. App'x 595, 599 (3d Cir. 2010) ("That the dismissal of those charges resulted from White's plea agreement with the prosecution, and not his innocence, means that he cannot establish favorable termination for purposes of a § 1983 action for malicious prosecution."); *Marable v. West Pottsgrove Twp.*, 176 F. App'x 275, 281 n.1 (3d Cir. 2006) ("A prosecutor's decision to drop charges as part of a compromise with the accused does not amount to a 'favorable termination' of state proceedings for purposes of permitting the accused to maintain a subsequent claim under § 1983 for malicious prosecution.") (internal citation omitted)); *McGann v. Collingswood Police Dep't*, No. 10–3458, 2012 WL 6568397, at *7 (D.N.J. Dec. 17, 2012) ("Thus, even '[i]f the prosecutor drops the charges as part of a compromise with the accused, the accused will fail the favorable termination prong necessary to maintain a malicious prosecution claim under § 1983.") (citation omitted).

Based on his failure to plead favorable termination, the Court dismisses Plaintiff's malicious prosecution claim without prejudice.[3]

---

[3] Similarly, any conspiracy to maliciously prosecute claim is also dismissed. *See White v. Brown*, 408 F. App'x 595, 599 (3d Cir. 2010) (citing *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) ("In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right.")); *Washington v. Boder*, No. 17-2457, 2019 WL 364838, at *2, n.8 (3d Cir. Jan. 29, 2019) ("We also agree that his civil rights conspiracy claim was properly dismissed for want of an adequately pleaded, underlying substantive claim."); *Muth v. Woodring*, No. 17-3038, 2018 WL 6002879, at *5 (3d Cir. Nov. 15, 2018) ("Because there was probable cause to believe that Muth committed the arson, and he therefore fails to state a malicious prosecution claim, there is no predicate tort, and thus his conspiracy claim was correctly dismissed."); *Olick v. Pennsylvania*, 739 F. App'x 722, 727 (3d Cir. 2018) ("Olick's failure to plausibly allege the deprivation of any other civil right warranted dismissal of the conspiracy claims related to those underlying civil rights claims.").

**B. Judge Pincus**

"It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000) (quoting *Mireles v. Waco*, 502 U.S. at 11, 9 (1991)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *see also Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 769 (3d Cir. 2000) ("[I]mmunity will not be lost merely because the judge's action is 'unfair' or controversial."). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359.

"[Judicial] immunity is overcome in only two sets of circumstances." *Mireles*, 502 U.S. at 11. "First, a judge is not immune from liability for nonjudicial acts, i.e., actions not taken in the judge's judicial capacity." *Id.* In determining whether an act qualifies as a "judicial act," courts look to "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectation of the parties, *i.e.*, whether they dealt with the judge in his [or her] judicial capacity." *Stump*, 435 U.S. at 362. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12.

The allegations against Judge Pincus relate solely to her failure to hold Assistant Prosecutor Vitale responsible for refusing to correct an allegedly defective indictment. Because such action clearly falls under the protection of judicial immunity, any intended claim against Judge Pincus is dismissed with prejudice.

**C. New Brunswick Police Department**

At the outset, the Court notes it will construe any claims against the New Brunswick Police Department as a claim against the city of New Brunswick. *See Mikhaeil v. Santos*, 646 F. App'x 158, 163 (3d Cir. 2016) (per curiam) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997) ("Although local governmental units may constitute 'persons' against whom suit may be lodged under § 1983, a city police department is a governmental sub-unit that is not distinct from the municipality of which it is a part.")).

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)); *see also McTernan v. City of York, PA*, 564 F.3d 636, 657 (3d Cir. 2009). Thus, for government entity liability to attach under *Monell*, any injury must be inflicted by "execution of a government's policy or custom." *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) (citing *Monell*, 436 U.S. at 694). To satisfy the pleading standard for a *Monell* claim, a claimant "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan*, 564 F.3d at 658 (citations omitted).

"[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citation omitted). However, a failure to train claim can only serve as the basis for a § 1983 liability when "the failure to train

amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *Id.* (citation omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." *Id.* (citation omitted).

None of the very limited allegations against the city of New Brunswick would suggest a viable *Monell* claim. It appears Plaintiff has named the police department (*i.e.* city) based only on its employment of the police officers who maliciously prosecuted him. (*See* ECF No. 9, at 27.) As stated above, that is insufficient for liability against the city. *See Andrews v. City of Phila.*, 895 F.2d at 1480. Any intended claim against the city of New Brunswick is dismissed without prejudice.

### D. State Law Claims

When a court has dismissed all claims over which it had federal question jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). As the Court has dismissed Plaintiff's federal claims for failure to state a claim upon which relief may be granted, the Court will exercise its discretion to decline supplemental jurisdiction over Plaintiff's state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

## IV. CONCLUSION

For the reasons stated above, the Amended Complaint is **DISMISSED** in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A for failure to state a claim upon which relief may be granted. Because it is conceivable Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open this case and to file a second amended complaint.

An appropriate order follows.

Dated: March 29, 2019

>  */s/ Brian R. Martinotti*
>  **HON. BRIAN R. MARTINOTTI**
>  **UNITED STATES DISTRICT JUDGE**